SUSAN M. CHEHARDY, Chief Judge.
| «¿Defendant appeals his conviction of second degree murder. For the reasons that follow, we affirm.

Facts and Procedural History

On Sunday, July 15, 2012, Deputy Miguel Dukes of the Jefferson Parish Sheriffs Office responded to reports of a shooting on Alex Kornman Boulevard in Harvey, Louisiana. Upon the deputy’s arrival, he observed the body of Fred Brown, the victim in this case, lying in a pool of blood with multiple gunshot wounds. Seven 9 mm casings were recovered on the scene and were determined to have been fired from the same weapon. The victim was transported to the hospital and subsequently died. Dr. Susan Garcia, an expert in the field of forensic pathology, performed the autopsy and classified the victim’s manner of death a homicide. The victim had sustained multiple gunshot wounds, of which one to the head was fatal.
In the days immediately following the murder, Detective Travis Eserman of the Jefferson Parish Sheriffs Office spoke with several witnesses. One neighbor, Nicole Henry, refused to give a recorded statement, but informed the detective that she heard gunshots, and looked up to see defendant shoot the victim and run off. 14However, at trial Ms. Henry changed her story, testifying that she did not see anything, but heard only gunshots.
Another neighbor, Chris Henry, testified that the victim came to her residence on July 15, 2012 to sell her “a pill.” Ms. Henry declined to purchase the pill, but accompanied the victim “to the cut where everybody was standing at.” Here, Ms. Henry observed defendant, his brother, and the victim “fussing.” She heard defendant say, “I got a gun, and I’ll kill you.” The victim replied: “You’re not the only one with a gun.” As the three men continued to argue, Ms. Henry asked defendant’s father, who was also present, to stop them from fighting. The victim began to remove his shirt “like he was going to fight” when defendant pulled out a gun and shot the victim several times. Ms. Henry subsequently identified defendant, his brother, and his father from photographic lineups.
Rhonda Honor, defendant’s father’s girlfriend who resided with him at the time on Alex Kornman Blvd., testified that in the evening of July 15, 2012, she stepped outside to find defendant, his brother, and his father standing outside the apartment. She stepped back inside briefly and when she returned, the three men were walking down the street. Within moments, she heard gunshots and saw defendant, his brother, and his father running back towards her. Although she did not see defendant with a gun that night, Ms. Honor testified that she had seen him with one in the past. She also identified defendant, his brother, and his father from photographic lineups.
On July 18, 2012, defendant was placed under arrest at his residence, where a search failed to turn up any evidence linking him to the victim’s murder. At the same time, a search of defendant’s father’s house was conducted, which also failed to turn up any relevant evidence. After being advised of his Miranda rights, defendant executed a rights of arrestee form, in which he agreed to waive his |,.¡rights. Defendant refused to have his statement taped, but spoke with Detective Eserman and Detective Solomon Burke. He explained that he had been with his girl *902 friend at her house until 11:00 p.m. on July 15, 2012, that he had not seen his brother that day, and that he knew nothing about the murder.
Officers spoke with defendant’s girlfriend, Carrione Girod, and found her story to be inconsistent with defendant’s. She testified that in the early evening of July 15, 2012, her cousin picked her up from her place of work, CiCi’s Pizza on Airline Highway in Metairie, and dropped her off to her sister’s apartment at the Summerfield Apartments on Lapalco Boulevard in Harvey. John Wendelschaefer, the general manager of CiCi’s, authenticated Ms. Girod’s time card for July 15, 2012, which reflected that she clocked in at 12:00 p.m. and clocked out at 3:18 p.m. that day. Ms. Girod explained that defendant picked her up from her sister’s around 9:00 p.m. and they proceeded to his uncle’s house in Harvey where they spent the evening.
On December 13, 2012, a Jefferson Parish Grand Jury indicted defendant with the second degree murder of Fred Brown, a violation of La. R.S. 14:30.1. On August 28, 2013, after a three-day trial, a twelve-person jury found defendant guilty as charged. On September 4, 2013, defendant was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. This timely appeal followed.

Discussion

In defendant’s sole assignment of error, he argues the evidence was insufficient to support the guilty verdict because the jury improperly utilized impeachment evidence as substantive evidence of guilt. Nicole Henry, who initially gave a statement to the police inculpating defendant, later recanted at trial. Defendant contends that Ms. Henry’s statement to police, while admissible as | (¡impeachment evidence, was not admissible as substantive evidence of guilt pursuant to La. C.E. art. 607. Defendant further asserts that the trial court erred by not instructing the jury as to the limited scope of this evidence.
We first address the sufficiency of the evidence. See State v. Hearold, 603 So.2d 731, 734 (La.1992) (“When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence.”). In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657, cert, denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002); State v. Mickel, 09-953, p. 4 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10-1357 (La.1/7/11), 52 So.3d 885.
This directive that the evidence be viewed in the light most favorable to the prosecution requires the reviewing court to defer to the actual trier of fact’s rational credibility calls, evidence weighing, and inference drawing. State v. Caffrey, 08-717, p. 4 (La.App. 5 Cir. 5/12/09), 15 So.3d 198, 202, writ denied, 09-1305 (La.2/5/10), 27 So.3d 297. This deference to the fact finder does not permit a reviewing court to decide whether it believes a witness or whether the conviction is contrary to the weight of the evidence. Id. Indeed, a reviewing court errs by substituting its appreciation of the evidence and the credibility of witnesses for that of the fact finder and overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, *903 the jury. See State v. Calloway, 07-2806, pp. 1-2 (La.1/21/09), 1 So.3d 417, 418. As a result, |7under the Jackson standard, a review of the record for sufficiency of the evidence does not require the reviewing court to determine whether the evidence at the trial established guilt beyond a reasonable doubt, but whether, upon review of the whole record, any rational trier of fact would have found guilt beyond a reasonable doubt. State v. Jones, 08-20, pp. 6-7 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240.
In making this determination, a reviewing court will not re-evaluate the credibility of witnesses or re-weigh the evidence. Caffrey, supra. Indeed, the resolution of conflicting testimony rests solely with the trier of fact, who may accept or reject, in' whole or in part, the testimony of any witness. See State v. Bailey, 04-85, p. 4 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 955, writ denied, 04-1605 (La.11/15/04), 887 So.2d 476, cert, denied, 546 U.S." 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). Thus, in the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. State v. Dixon, 07-915, p. 11 (La.App. 5 Cir. 3/11/08), 982 So.2d 146, 153, writ denied, 08-0987 (La.1/30/09), 999 So.2d 745.
Defendant was convicted of second degree murder, a violation of La. R.S. 14:30.1. Second degree murder is defined, in pertinent part, as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. State v. Seals, 09-1089, pp. 13-14 (La.App. 5 Cir. 12/29/11), 83 So.3d 285, 306, unit denied, 12-0293 (La.10/26/12), 99 So.3d 53, cert. denied, — U.S. —, 133 S.Ct. 2796, 186 L.Ed.2d 863 | s(2013) (citing La. R.S. 14:10(1)). The determination of specific intent is a question of fact. Id., 09-1089 at 14, 83 So.3d at 306. Specific intent may be inferred from the circumstances and frdm the defendant’s actions, and the intent to kill or to inflict great bodily harm may be inferred from the extent and severity of the victim’s injuries. Id. Further, a specific intent to kill may be inferred from the intentional use of a deadly weapon such as a knife or gun. State v. Cochran, 09-85 (La.App. 5 Cir. 6/23/09), 19 So.3d 497, 508, writ denied, 09-1742 (La.3/26/10), 29 So.3d 1249; see also State v. Gonzalez, 07-449, p. 8 (La. App. 5 Cir. 12/27/07), 975 So.2d 3, 8, writ denied, 08-0228 (La.9/19/08), 992 So.2d 949 (“The act of aiming a lethal weapon and discharging it in the direction of the victim supports a finding by the trier of fact that the defendant acted with specific intent to kill.”).
In addition to proving each statutory element of the crime charged, the State must also prove the identity of the perpetrator. State v. Williams, 08-272, p. 4 (La.App. 5 Cir. 12/16/08), 3 So.3d 526, 529, writ denied, 09-0143 (La.10/16/09), 19 So.3d 470. Thus, in order to carry its burden of proof, the State is required to negate any reasonable probability of mis-identification. Id. Positive identification by only one witness is sufficient to support a conviction. Id.
In the instant case, Chris Henry testified that she saw defendant pull out a gun and shoot the victim several times. Ms. Henry subsequently identified defendant in a photographic lineup and in open court. We find this testimony, when viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact beyond a reasonable doubt that *904 defendant acted with the specific intent to kill or inflict great bodily harm.
In addition to this testimony, Detective Eserman testified that Nicole Henry told him days after the murder that she saw defendant shoot the victim. However, at trial, Ms. Henry changed her story, claiming she did not see anything, but heard |flonly gunshots. It is Ms. Henry’s statement to the police that defendant contends on appeal was improperly used as substantive evidence of guilt at trial. Since we have found the testimony of Chris Henry was sufficient to support defendant’s conviction, it follows that Nicole Henry’s testimony is cumulative. Nevertheless, we find it was admissible to be used as substantive evidence of guilt and that a limiting instruction was not warranted.
We addressed a similar argument in State ex rel D.W., 09-855 (La.App. 5 Cir. 9/14/10), 47 So.3d 1048. There, the juvenile defendant, who had been adjudicated delinquent on two counts of attempted first degree murder, challenged on appeal, among other things, the sufficiency of the evidence. Id., 47 So.3d 1048, 1052. The evidence supporting his convictions consisted primarily of eyewitness testimony. See id., 47 So.3d at 1056-57. At trial, detectives testified that they obtained statements from eyewitnesses at the scene who identified the defendant as a shooter. Id., 47 So.3d at 1051. Yet these eyewitnesses later recanted their identifications at trial, claiming they did not see the defendant shoot the victims. Id.
On appeal, the defendant argued that the eyewitnesses’ statements to the police could not be used as substantive evidence of guilt pursuant to La. C.E. art. 607(D)(2). Id., 47 So.3d at 1058. Indeed, La. C.E. art. 607(D)(2) permits the introduction of a prior inconsistent statement, even if it is inadmissible hearsay, but only for the limited purpose of attacking the credibility of a witness. See State v. Cousin, 96-2973 (La.4/14/98), 710 So.2d 1065, 1069. However, an exception to this general rule exists for cases in which a witness’ prior inconsistent statement also constitutes a prior statement of identification for purposes of La. C.E. art._|ji801(D)(l)(c).[1] State v. Johnson, 99-3462 (La.11/3/00), 774 So.2d 79, 80. Such a statement is not hearsay, may be used assertively as substantive evidence of guilt, and may be established through the testimony of one to whom the statement was made. See State v. Stokes, 01-2564 (La.9/20/02), 829 So.2d 1009, 1010. This is so even if the witness denies making an identification or fails or is unable to make an in-court identification. Id.
In D.W., because the witnesses’ prior inconsistent statements were statements of identification, we found them to be admissible as substantive evidence of guilt in accordance with the exception as provided by La. C.E. art. 801(D)(1)(c). See D.W., 47 So.3d at 1058-61. Including the eyewitnesses’ prior statements in our sufficiency analysis, we concluded that the evidence was sufficient to support the defendant’s convictions. Id., 47 So.3d at 1057.
Similarly, in the instant case, we find Nicole Henry’s statement to Detective Es-erman that she saw defendant shoot the victim was a statement of identification and was thus admissible as substantive evidence of guilt. Accordingly, we find no error in the trial court’s omission of a limiting instruction regarding this testimony. Moreover, the record reflects that defendant neither requested a special in *905 struction nor objected to the jury instructions and so failed to preserve this issue for appellate review. See State v. Elliott, 04-986 (La.App. 5 Cir. 2/15/05), 896 So.2d 1110, 1113, writ denied, 05-2182 (La.5/26/06), 930 So.2d 11 (“Under La. C.Cr.P. art. 801(C), a party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error.”). This assignment of error is without merit.
| n Errors Patent
We have reviewed the record for errors patent, according to La. C.Cr.P. art. 920, and have found a discrepancy in the State of Louisiana Uniform Commitment Order. The Uniform Commitment Order incorrectly states that the offense date was July 19, 2012 and that the adjudication date was September 4, 2013. The indictment and facts adduced at trial reflect that the offense occurred on July 15, 2012; and the record indicates that the jury returned its verdict on August 28, 2013.
In order to ensure an accurate record, we remand this matter and order the Uniform Commitment Order be corrected to reflect the correct offense and adjudication dates. See State v. Long, 12-184, p. 10 (LaApp. 5 Cir. 12/11/12), 106 So.3d 1136, 1142. Further, the clerk of the district court is ordered to transmit the original of the corrected Uniform Commitment Order to the officer in charge of the institution to which defendant has been sentenced and to the Department of Corrections’ legal department. Id. (citing La.C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam)).

Decree

For the foregoing reasons, defendant’s conviction and sentence are affirmed. The matter is remanded for correction of the Uniform Commitment Order.

CONVICTION AND SENTENCE AFFIRMED; REMANDED FOR CORRECTION OF UNIFORM COMMITMENT ORDER.

JOHNSON, J., concurs with reasons.

. La. C.E. art. 801(D)(1)(c) provides that a statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is one of identification of a person made after perceiving the person.