WICKER, J.
| tDefendant, Daylan Bradstreet, appeals his convictions and sentences for attempted second-degree murder and aggravated criminal damage , to property.. For the following reasons, we affirm.

STATEMENT OF THE CASE

On April 3, 2014, the Jefferson Parish District Attorney filed a bill of information charging defendant with two counts of attempted second-degree murder in violation of La. R.S. 14:27 and 14:30.1- (counts one and two) and one count of aggravated criminal damage to property in violation of La. R.S. 14:55 (count three).
The matter proceeded to a bench trial on May 11, 2015.[1] Following the bench trial, the trial judge found defendant guilty as charged.[2] On May 28, 2015, the trial court sentenced defendant to forty years imprisonment at hard labor on counts one and two, and fifteen years imprisonment at hard labor on count three. The trial judge ordered the sentences to run concurrent to each other but consecutive to any other sentence defendant was serving.[3] Defendant urged a motion to reconsider sentences, which the trial judge denied.
Following defendant’s- convictions, the Jefferson Parish District Attorney filed a multiple offender bill of information, alleging defendant to be a second felony offender. On August 17, 2015, following a hearing on the multiple bill, the trial court found defendant to be a second felony offender. The trial court vacated defendant’s original sentence on count one and resentenced defendant pursuant to La. R.S. 15:529.1 to sixty-five years imprison *881 ment at hard labor -without the | ^benefit of probation or suspension of sentence, to be served concurrent to his sentences on counts two and three but consecutive to any other sentence he was serving.[4] At the conclusión of the multiple offender hearing, the trial judge considered and denied defendant’s motion to reconsider sentence. This timely appeal follows.

FACTS

Joseph Washington testified that on the evening of January 20, 2014, he drove to visit his friend, Troylynn Smith, at her home on Hooter Road.[5] He testified that he was speaking with Troylynn outside when two black males, wearing all black, approached them and asked, “What’s up, T?” Immediately thereafter, he heard -gunfire. Mr. Washington ran to the backyard, jumping over a fence to escape. He testified that the two men were chasing him through the backyard and that he jumped over two more fences to hide in bushes until the two men lefti He testified that he was shot in the ankle but eventually crawled back to the front of the house. When questioned concerning the identity of the shooters, he stated that he could not identify either of the men but that Troy-lynn told him at some point that one of the shooters lived on Hooter Road.
Troylynn[6] testified that she suffered from memory problems and was unable to remember anything from the night of the shootings.[7] She testified that she was talking with Mr. Washington in front of her house on January 20, 2014, when she was approached by two men and shot in the arm, .legs, and abdomen. She testified at trial that she could not see the men’s faces. She testified that she knows defendant- from the neighborhood but testified that she could not identify defendant |3at trial as .involved in the shootings. Troy-lynn further testified.that she did not remember identifying defendant at the hospital after the shootings as the person who shot her but did acknowledge that her initials were.placed on a photographic lineup next to defendant’s picture.
Deputy Umakantbhai of the Jefferson Parish Sheriffs Office testified that he was the first responding officer on the scene. He stated that !he was unable to speak with Troylynn but that he spoke with Mr. Washington, who informed him that two black males approached him and Troylynn. He further testified that Mr. Washington related to him that one of the individuals said, “What’s up, T?” and then “shots rang out.”
Detective Brandon Veal of the Jefferson Parish Sheriffs Office testified that he went to the hospital after the shooting to meet with Troylynn, but that she was heavily medicated and could not give a statement. He spoke with Troylynn’s mother, Lynh Smith, who informed him that Troylynn had earlier told her that one of the shooters lived on Hooter Road. She further informed Deputy Veal that Troy-lynn gave hér a description of the shooter’s house on Hooter Road, “two houses down from Ms. Rita’s house,” and further provided the first few letters of the shooter’s *882 name. Detective Veal returned to the hospital a few days later, when Troylynn was coherent, and presented her with a photographic lineup. He testified that Troylynn identified defendant as the individual who shot her 'on the night of January 20, 2014. Detective Veal stated that Troylynn’s identification was immediate and certain and that Troylynn immediately cried when she saw defendant’s photograph.
Sergeant Robert Pellegrin of the Jefferson Parish Sheriffs Office testified that he took photographs and processed the crime scene. He testified that he recovered 29 casings. Jene Rauch, accepted as an expert in firearms and tool mark identification, testified that she examined the casings recovered from the scene and 14determined that three separate weapons were used to fire the casings recovered on the scene.
Troylynn’s mother, Lynn, testified that she was washing dishes inside of her home when she heard gunshots. She testified that she went outside to find Troylynn lying on the ground near her vehicle in the driveway and, a few minutes later, she saw Mr. Washington crawling from the backyard- with gunshot wounds to his ankle. She called 9-1-1 multiple times. She testified that she identified three bullet holes in her car parked in the driveway and that those bullet holes were not present prior to the January 20,2014 shootings.
Detective Harley Smith of the U.S. Marshal’s .Task Force testified that he, along with nine other marshals, arrived to 180 Fourth Street in Bridge City on February 20, 2014, to arrest defendant. He testified that he discovered defendant in the backyard of the residence and placed him- under arrest. He testified that he handcuffed defendant and read him his Miranda[8] rights. Defendant subsequently told Detective Smith that he had heard from people in the neighborhood that the police were looking for him because of a shooting in the area.
Deputy Jason Pryer with the “shoot squad” of .the Jefferson Parish Sheriffs Office testified that he met with defendant at the Detective Bureau on February 20, 2014, and that defendant completed a waiver of rights form and agreed to make a statement. Defendant told him that he had been at the Daiquiri Shoppe at 6240 Lapalco Blvd. on the night 'of the shootings with his girlfriend, Perreill Chest, and her cousins watching a NFL football game. Deputy Pryor testified that after he discovered that ho NFL football game was televised the night of the shootings, he asked defendant again as to his whereabouts on the night of the shootings. He testified that defendant recanted and wavered in his story, but then again stated |,.¡clearly that he was inside of the Daiquiri Shoppe on Lapalco that night watching a football game.
Deputy Pryor contacted the manager of the Daiquiri Shoppe, who did not recognize defendant as a regular patron. He further acquired- surveillance video from the Daiquiri Shoppe- and testified that he did not observe defendant on the video surveillance from .the night of the shooting. Deputy Pryor testified that -he only viewed surveillance video from inside of the Daiquiri Shoppe and that the business did not have outdoor surveillance. During defendant’s interview, another detective telephoned defendant’s girlfriend, Perreill, who provided a statement inconsistent with defendant’s statement concerning defendant’s whereabouts on the night of the shootings. Deputy Pryor interviewed Perreill’s cousins, Nikki Chest and Ireal Chest, who both informed him they had *883 been at the Daiquiri Shoppe that evening with Perreill, but that defendant was not with them that night.
Perreill Chest, defendant’s former girlfriend, testified at trial.- Perreill testified that she was with her cousins at the Daiquiri Shoppe on the night of the shootings. She testified that defendant contacted her to pick him up at “eleven-something” that night and that she picked him up from Bridge City and brought him to her apartment in Boutte. When questioned regarding recorded phone conversations with defendant from prison, wherein Perreill expressed frustration with defendant, she explained that she was frustrated with defendant because he had involved her in the investigation, even though defendant knew she was not with him at the time of the shootings.
Nikki Chest testified at trial that she is Perreill’s cousin. She testified that she and her cousins, including Perreill, arrived at the Martin Luther King, Jr. parade on January 20, 2014, at approximately 5:00 p.m. as it was ending, and then walked to the Daiquiri Shoppe on.Lapalco Blvd. She testified that defendant was not with them at all that night. Perreill’s other cousin, Ireal Chest, testified at trial Rthat she knows defendant “very, well” from the Bridge City neighborhood. She testified that she was with Perreill and her other cousins on the night of the shootings at the Daiquiri Shoppe on Lapalco Blvd. She also stated that defendant was not with them at all that night.
Susan Johnson, a T-Mobile senior specialist, testified regarding defendant’s cell phone records. Ms. Johnson discussed the time that a cellular phone call was made or received on defendant’s phone on the night of the shootings and the closest tower that the cellular signal “used” to make or receive those phone calls. Ms. Johnson testified that the records reflect a phone call made from defendant’s cell phone at 5:49 p.m., which used a tower close to Hooter Road. The next phone call placed on defendant’s phone- occurred at 7:30 p.m., and that call also used the tower closest to Hooter Road. She testified that there were several text messages sent and received between 5:49 p.m. and 7:30- p.m., but that the records do not permit her to determine which tower was used for those text messages.
The cellular phone records, introduced into evidence at. trial, reflect that more than 75 telephone calls were made or received with defendant’s cell phone between 7:30 p.m. and 10:30 p.m. on the night of the shootings. Ms. Johnson testified that the only tower accessed. by these 75 phone calls was the tower nearest to the scene of the crime. She further testified that the records reflect that no phone calls or text messages were received or made from 7:15 to 7:30 p.m. that night.[9].
At trial, Troylynn testified that' she had been threatened concerning her testimony to be provided at trial, but that defendant never contacted her or threatened her. Melanie Villemarette, .a victim services Coordinator at the Jefferson Parish District Attorney’s Office, testified at trial that she met with Troylynn in her office on multiple occasions to discuss the facts surrounding the shootings. She testified that Troylynn created a hand-drawn map or drawing during one of these ^meetings, introduced into evidence, laying out the scene of the crime. Ms. Villemarette testified that Troylynn never expressed uncertainty about the events leading up to the shootings or in her identification of defendant as the individual who shot her.
*884 Defendant testified at trial. Defendant testified that he could not recall specifically where he was on the night of January 20, 2014, but that he did recall arriving at the Daiquiri Shoppe between, 6:00 p.m. and 6:30 p.m. to drop off money to his girlfriend, Perreill, for drinks. He testified that he never went inside the Daiquiri Shoppe. He stated that after he left the Daiquiri Shoppe, he “probably” went to his apartment “on Westwood” most “likely” with “another female.”
Defendant admitted that he had been to his mother’s house on Hooter Road several times that day. However, he could not state the exact times that he was on Hooter Road that night. Defendant further testified that he was dating Perreill at the time of the, shootings and that" he never asked her to lie or say anything to police that would benefit him.[10] He testified that he did not own either a 9 mm or a .40 caliber gun at the time of the shootings. Defendant further stated that he knows the victim, Troylynn, from school but that he did not see her on the night of the shootings and had not seen her in a very long time.

DISCUSSION

Defendant has appealed his convictions and sentences; asserting' three assignments of. error: (1) the evidence presented against him at trial was insufficient to support his convictions; (2) a series of discovery violations- denied him his constitutional right to a fair trial; and (3) his sentences are unconstitutionally excessive. We address each assignment of error in turn.
1 ^Sufficiency of the Evidence
We first consider defendant’s claim that the evidence at "trial'was not sufficient to support his convictions. When the issues on appeal pertain to both sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992). The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. King, 06-554 (La.App. 5 Cir. 1/16/07), 951 So.2d 384, 390, writ denied, 07-0371 (La.5/4/07), 956 So.2d 600.
An appellate court’s’primary function is not to redetermine the defendant’s guilt or innocence in accordance with its appreciation of the facts and credibility of‘the witnesses. Rather, our function is to review the evidence in the light most favorable to the prosecution and determine whethér there is sufficient evidence to support the fact-finder’s conclusion. State v. Banford, 94-883 (La.App. 5 Cir. 3/15/95), 653 So.2d 671, 677.
Evidence may be direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact can be inferred according to reason and common experience. State v. Williams, 05-59 (La.App. 5 Cir. 5/31/05), 904 So.2d 830, 833. All evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Bone, 12-34 (La.App. 5 *885 Cir. 9/11/12), 107 So.3d 49, 58, writ denied, 12-2229 (La.4/1/13), 110 So.3d 574; State v. Wooten, 99-181 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 99-2057 (La.1/14/00), 753 So.2d 208.
UDefendant was convicted of attempted second-degree murder in violation of La. R.S. 14:27 and 14:30.1. Second-degree murder is the killing of a human being when the offender has specific intent to kill or inflict great bodily harm. La. R.S. 14:30.1. Attempt is. defined as “[a]ny person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended[.]” La. R.S. 14:27(A). The crime of attempted murder requires proof of the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. State v. Cepriano, 00-213 (La.App. 5 Cir. 8/29/00), 767 So.2d 893, 897.
Specific intent is “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” La. R.S. 14:10(1). Because specific intent is a state of mind, it need not be proven as a fact, but may be inferred -from the circumstances and actions of the accused as well as the extent and severity of the victim’s injuries, Bone, 107 So.3d at 58; State v. Lewis, 97-160 (La.App. 5 Cir. 7/29/97), 698 So.2d 456, 459, writ denied, 97-2381 (La.3/27/98), 716 So.2d 881. It is well established that the act of aiming a lethal weapon and discharging it in the victim’s direction supports a trier of fact’s finding that the defendant acted with specific intent to kill. See State v. Bone, supra; State v. Noble, 425 So.2d 734, 736 (La.1983).
Encompassed in proving the elements of an offense is the necessity of proving the identity of -the defendant as the perpetrator. When the key issue in the case is identification, the State is required to negate any reasonable probability of misidentification in order to carry, its burden of proof. State v. Abdul, 11-863 (La.App. 5 Cir. 4/24/12), 94 So.3d 801, 810-11, writs denied, 12-1224, 12-1226 (La.10/12/12), 99 So.3d 41; State v. Billard, 03-319 (La.App. 5 Cir. 7/29/03), 852 So.2d 1069, 1072, writ denied, 03-2437 (La.2/6/04), 865 So.2d 739. Positive identification by. only one witness is sufficient to support a conviction. State v. Williams, 02-645 (La.App. 5 Cir. 11/26/02), 833 So.2d 497, 503, writ denied, 02-3182 (La.4/25/03), 842 So.2d 398.
Defendant contends that the evidence against him is insufficient because neither victim identified him at trial as being, involved in the crime. However, the testimony of other individuals reflects that Troylynn positively identified defendant as the individual who- shot her. - This Court has previously determined that such a pri- or, inconsistent statement is admissible in cases where a “witness’ prior ineqnsistent statement also constitutes a prior statement of identification for purposes of La. C.E. art. 801(D)(1)(c). 'Such a statement is not hearsay, may be used assertively as substantive evidence of guilt, and may be established through the testimony of one to whom the statement was made. This is so even if the witness denies making an identification or fails or is unable to make an in-court identification.” State v. Robinson, 14-222 (La.App. 5 Cir. 9/24/14), 150 So.3d 900, 904 (citations and footnote omitted), writ denied, 14-2267 (La.8/28/15), 175 So.3d 964.
At trial, the State presented evidence to show that on January 20, 2014, defendant approached the two victims in Troylynn’s *886 driveway on Hooter Road and opened fire. Both- victims sustained gunshot wounds and 29 casings were recovered from the scene. Further, the photographs of the scene reflect the severity and extent of the victims’ injuries — Troylynn is seen in the photographs lying on the ground motionless with, blood pouring from her side.
Although Troylynn did not identify defendant at trial, she previously identified defendant as the shooter by photographic lineup. Troylynn’s mother, Lynn Smith, testified that, at the hospital, Troylynn informed her that the individual who shot her lived on Hooter Road and further described the location of fy defendant’s home and the first few letters of his name. From that information, Detective Veal created a photographic lineup containing defendant’s picture. Detective Veal testified that Troylynn identified defendant immediately and with certainty in a photographic lineup as the shooter. Further, Ms. Villemarette testified that she met with Troylynn multiple times prior to trial and that Troylynn was certain of the identity of the individual who shot her.[11]
Defendant admitted at trial that his mother lives on Hooter Road and that he was in the area on the night of the shootings. Although defendant testified that he was at the Daiquiri Shoppe or with “another female” at the time of the shootings, defendant provided no alibi witnesses. Rather, Perreill, Nicki, and Ireal Chest refuted defendant’s alibi and denied that defendant was with them at the Daiquiri Shoppe on the night of the shootings. Further, although the evidence reflects three separate weapons were utilized in the shootings and potentially multiple gunmen could have been involved, the law of principals states that all persons involved in the commission of a crime are equally culpable. State v. Massey, 11-357 (La.App. 5 Cir. 3/27/12), 91 So.3d 453, 463-64, writ denied, 12-0991 (La.9/21/12), 98 So.3d 332 (wherein this Court determined that whether a defendant actually fires the bullet that strikes the victim is of no consequence, and the defendant may be convicted equally as a principal to the crime).
Considering the record as a whole, we find the evidence presented at trial sufficient to support defendant’s convictions for attempted second degree murder.
Defendant was also convicted of aggravated criminal damage to property. La. R.S. 14:55 defines aggravated criminal damage to property as “the intentional | ^damaging of any structure, watercraft, or movable, wherein it is foreseeable that human life might be endangered, by any means other than fire or explosion.” A conviction for aggravated criminal damage to property does not require a showing of specific intent; rather, the State must only show general intent, that is, that the defendant “voluntarily did the act.” State v. Brumfield, 329 So.2d 181, 190 (La.1976). At trial, the State introduced photographs of the scene, which reflect multiple bullet *887 holes to a vehicle parked in the driveway at the scene of the crimes. Troylynn’s mother, Lyñn, testified that she owns the vehicle depicted in the photographs and that the bullet holes were not present 'pri- or to the night of the shootings. The photographs introduced into evidence reflect that Troylynn was shot in the driveway right next to Lynn’s vehicle. Further, given the injuries sustained to the victims and the use of a firearm, it is foreseeable that human life might be endangered. Therefore, we find the evidence presented is sufficient, to sustain a conviction for aggravated criminal damage to property. This assignment of error lacks merit.

Discovery Violations

In his second assignment of error, defendant alleges that the State’s pattern of late disclosures and discovery violations denied him his constitutional right to a fair trial. Specifically, defendant complains that the State failed to timely disclose defendant’s statements made to investigating officers, recordings of prison phone calls, and copies of defendants cellular phone records. He further argues that the trial court erred in allowing Ms. Villamar-ette to testify as a “surprise witness” at trial in violation of La-. C.Cr.P. art. 727 and in allowing the introduction into evidence of a map or drawing related to Ms. Ville-marette’s testimony. The trial court conducted a hearing-on May 4, 2015, addressing several motions in limine concerning the evidence complained of on appeal. We address each alleged discovery violation in turn.
| ]aDefendant’s Video Statement
Defendant complains that he was not timely provided a copy of his video recorded statement made to investigating officers. On May 1, 2015, defendant filed a motion in limine to exclude the introduction of any statement made by defendant not previously provided to him. On May 4, 2015, the trial court conducted a hearing on defendant’s motion, at which, time defense counsel informed the court that he had that morning been provided a copy of defendant’s video-recorded statement made to investigating officers.
The State explained in detail to the court the reason that the video recording had not been previously provided to defense counsel. The prosecutor explained to the court that he was under the impression that his office had misplaced the recorded statement; as he-prepared for trial, he met with a detective involved in the case, who informed him that because this was a “shoot squad” case, the actual recording may still remain on the hard drive of the computer in that department. The prosecutor informed the- court that the detective contacted someone in the “shoot squad” department and was able to obtain a copy of the recorded statement from that department’s computer’s hard drive.
At the hearing on the motion in limine, defense counsel requested á continuance of the trial to allow him additional time to review the video-recorded statement. The trial court granted defense counsel’s-request for a continuance.[12] The trial judge allowed' defendant and his counsel to remain in the courtroom alone‘that day to review the video-recorded statement together. Defense counsel subsequently informed the court that he had viewed the video and that the video mostly contained information already known to the defense. Defendant’s video-1 urecorded statement *888 was neither admitted into evidence nor considered by the judge at trial.
The State has a duty to disclose any evidence discovered prior to or during trial in a timely manner. See La. C.CrJP. art. 729.3.[13] In the event that the State or defendant does not timely disclose evidence, La. C.Cr.P. art. 729.5 provides that the trial judge “may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or. enter such' other order, other than, dismissal, as may be appropriate.” In this case, the prosecutor explained the reason for the late disclosure of the video-recorded statement. Further, the trial judge granted a continuance of the trial to permit defendant additional time to prepare his defense. Additionally, the trial judge granted defendant and defense counsel access to the courtroom to view the video-recorded statement together, Under the facts of this case, we find that defendant was not .prejudiced by the State’s late disclosure and, further, that the trial judge did not abuse her discretion in granting a trial continuance under La. C.Cr.P. art, 729.5.

Defendant’s Statement upon Arrest

At the May 4, 2015 hearing, defendant also sought to exclude testimony concerning a statement defendant made to Detective Smith following his arrest. Defendant urged a motion to suppress the statement, which the trial court denied. On appeal, defendant does not challenge the admissibility of the statement or assign as error the trial court’s denial of his motion to suppress. Rather, he contends that the State’s late disclosure of the statement constitutes a discovery violation, which he alleges contributed to the denial of his right to a fair trial. •
[1fiAt the hearing, Detective Smith testified that he, along with a task force compiled of U.S. Marshalls and JPSO officers, arrested defendant on February 20, 2014. He testified that he read defendant his Miranda[14] rights and defendant advised he did not want to speak with any officers. The detective testified that, at some point thereafter, defendant, unprompted, told him that “he heard from the neighborhood that police is looking for him involving a— a shooting in that — -that .neighborhood.”
The prosecutor informed the court that he only recently discovered that defendant made a statement to Detective Smith following his arrest. He explained that he discovered the statement while responding to discovery in a separate criminal case, in which defendant is a named defendant, arising from defendant’s arrest for the attempted murder charges in this case. At the hearing, the prosecutor indicated that he emailed-the discovery packet, including the statement at issue, to defense counsel on Friday, May 1, 2015. The trial judge considered-‘the arguments’of counsel and found that, in light of the trial continuance allowing defendant additional time to review the discovery provided, the statement would not be precluded at trial.[15] Consid *889 ering that the trial judge granted a trial continuance to allow defendant' additional time to prepare his defense, we find that defendant was. not prejudiced by the timing of the State’s disclosure and, further, that the trial judge did not abuse .her discretion in' granting a trial continuance under La. C.Cr.P. art. 729.5.

Recorded Jail Calls

Defendant filed a motion in li-mine to exclude from trial recordings of 'phone calls that defendant made from prison. In his motion, filed on May 4, 2015, defendant states that he was not provided notice of the State’s intent to use the | unrecorded jail calls until April 8, 2015. At the May 4/2015 hearing, defense counsel asserted that the State previously indicated. to ;him that it.did not intend to use the recorded jaiLcalls at trial and, thus, he had not prepared a defense to those calls. The prosecutor, in response, admitted that he had previously informed defense counsel that he did not intend to use the recorded jail calls at trial. However, he stated that he subsequently discovered that the recorded jail calls became relevant to the State’s case-in-chief. The prosecutor explained that he filed a “Notice of Intent to Use Defendant’s Jail Calls” on April 8, 2015, providing defendant notice of the State’s intent to admit the recordings of the jail calls. The trial judge found that, in light of the continuance granted and the notice provided by the State concerning the recorded prison calls more than a month prior to trial, defendant had adequate time to .prepare his defense and denied defendant’s motion. '
The record reflects that on September 16, 2014, the State filed a “Notice of Discovery Provided to Defense,” indicating that a CD-⅛ disc containing defendant’s “jail calls” was provided to defense counsel at that time. Further, as stated by defense counsel, on April 8, 2015, more than one month jirior to trial, the State filed a “Notice of Intent to Use Defendant’s Jail Calls,” notifying defendant of its intent to introduce the recorded jail calls into evidence at trial. We find this disclosure and notice sufficient to comply with La. C.Cr.P. art. 729.3. Moreover, ⅛ light of the notice provided by the State and considering the trial continuance granted to allow defendant additional time to prepare his defense, we find that- the trial judge did not err in her judgment denying defendant’s motion in limine. ■ ..

Defendant’s Cell Phone Records

In brief to this Court, defendant claims that the State’s late disclosure of his cell phone records is an additional discovery violation that precluded the preparation of his defense and contributed to the denial of his right to a fair trial. 117On appeal, defendant claim's that the State did not providé 'a copy of defendant’s cell phone records until the morning of the May 4, 2015 hearing.
First, we find that defendant failed to object to the admission of his cell phone records' at trial or at the pre-trial hearing; Therefore, defendant is precluded from raising this issue on appéal,[16] See *890 La. C.Cr.P. art. 841(A). Nevertheless, the record reflects that on March 15, 2015, the State filed a “Notice of Discovery Provided to Defendant” listing that the State provided to defense counsel a “copy of phone records. 12 pages.” In its . brief to this Court, the State asserts that it provided copies of defendant’s cell phone records to defense counsel by March 15, 2015, the date of the filing of its “Notice.” Moreover, the cellular phone records introduced into, evidence at trial are 12 pages in length. Therefore, we find that the State’s disclosure of defendant’s cell phone records is not in violation of La. C.Cr.P. art. 729.3.[17]

Disclosure of Ms. Villemarette as a Witness

Concerning Ms. Villemarette’s testimony, defendant argues that the trial judge erred in allowing Ms. Villemarette to testify as a “surprise witness” at trial. Ms. Villemarette, a victim assistance coordinator with the District Attorney’s Office, testified at trial that she met with Troy-lynn on multiple occasions and that | iSTroylynn was certain that defendant was the individual who shot her on January 20, 2014. At trial, defendant objected to Ms. Villemarette’s testimony. In response, the prosecutor informed the court that he had not intended to call Ms. Villemarette as a trial witness. He further explained, however, that given Troylynn’s testimony— that she was unable to recall the identity of the individual who shot her — Ms. Ville-marette’s testimony became relevant and necessary to the State’s' case-in-chief. Ovér defendant’s objection, the trial judge allowed Ms. Villemarette to testify.
On appeal, defendant asserts that the trial judge erred in permitting Ms. Ville-marette to testify because defendant had no knowledge of this “surprise witness” who contradicted his alibi and confirmed his presence at the scene of the crime.
La. C.O.P. art. 727 governs the disclosure of alibi witnesses and provides, in pertinent part:
A. Upon written Remand of the district attorney stating the time, date, and place at which the alleged offense was committed, the defendant shall serve within ten days, or at such different time as the court may direct, upon the district attorney a written notice of his intention to offer a defense of alibi. Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses *891 upon whom he intends to rely to establish such alibi.
B. Within ten days thereafter, but in no event less than ten days before trial, unless the court otherwise directs, the district attorney shall serve upon the defendant or his attorney a written notice stating the names and addresses of the witnesses upon whom the state intends to rely to establish the defendant’s presence at the scene of the alleged offense and any other witnesses to be relied on to rebut testimony of any of the defendant’s alibi witnesses.
G. If prior to or during trial, a party learns of. an additional witness whose identity, if known, should have been included in the information furnished under. Subsection A or B, the party shall promptly notify the other party or his attorney of the existence and identity of such additional witness.
D. Upon the failure of either party to comply with the requirements of this rule, the court may exclude the testimony of any undisclosed witness offered by such party as to the defendant’s absence from or [19presence at, the scene of the alleged offense. This rule shall not limit the right of the defendant to testify in his own behalf.
E. For good cause shown, the court may grant an exception to any of the requirements of Subsections A through D of this Section.
Thus, La. C.Cr.P. art. 727 instructs that the State must provide a defendant “written notice stating the names and addresses of the witnesses upon whom the state intends to rely to establish the defendant’s presence at the scene of the alleged offense. ...”[18] The article further provides that, if either party fails to comply with the article’s requirements, the trial court may, in its discretion, exclude the testimony of the undisclosed witnesses. However, “for good cause shown,” the court may grant an exception to the rule’s requirements.
A trial court should consider the following factors in determining whether or not to exercise its discretionary power to exclude undisclosed evidence concerning a deféndant’s alibi: (1) the amount of prejudice that resulted from the failure to disclose, (2) the reason for nondisclosure, (3) the extent to which the harm caused by nondisclosure was mitigated by subsequent events, (4) the weight of the properly admitted evidence supporting the defendant’s guilt, and (5) other relevant factors arising out of the circumstances of the case. State v. Lucas, 99-1524 (La.App. 1 Cir. 5/12/00), 762 So.2d 717, 725, citing State v. Rogers, 95-1485 (La.App. 1 Cir. 9/27/96), 681 So.2d 994, 997, writs denied, 96-2609 (La.5/1/97), 693 So.2d 749, 96-2626 (La.5/1/97), 693 So.2d 749;
Under the facts of this case, we find the trial judge did not abuse, her discretion in allowing Ms. Villemarette’s testimony at trial. First, the. State provided a reasonable explanation for. the late disclosure of the testimony — it did not intend to call Ms. Villemarette until Troylynn unexpectedly recanted her previous identifications and testified at trial that she could not identify the | ^individual who shot her on January 20, 2014. Second,.any harm caused by the late disclosure of Ms. Villemarette as a witness was mitigated by subsequent events. Defense counsel thoroughly cross-examined Ms. Villemarette during the State’s case-in-chief. Further, following Ms. Villemarette’s testimony, a three-day recess of trial was granted to allow defendant time to locate the second victim, Mr. *892 Washington, to testify at trial. Following that three-day recess to further prepare his defense, defendant called Ms. Villemar-ette as a defense witness at trial and thoroughly questioned her concerning her meetings with Troylynn. Third, Ms. Ville-marette’s testimony concerning Troylynris previous identification of defendant as the individual who shot her corroborated testimony previously provided at trial by Detective Veal — who also testified that Troy-lynn identified defendant as the individual who shot her. Therefore, we find that defendant was not prejudiced by the late disclosure of Ms. Villemarette as a witness and we find the trial judge did not abuse her discretion in allowing the testimony at tidal.
Related to Ms. Villemarette’s testimony, defendant complains that the trial court erred in allowing a hand-drawn map, created by Troylynn in Ms. Villemarette’s office during one of their pre-trial meetings, to be admitted into evidence at trial over the defense’s objection. In response, the prosecutor again explained that he did not intend to call Ms. Villemarette as á witness and, thus, did not intend to admit the map into evidence until Troylynn testified inconsistent with her previous identification of defendant as one of the shooters. He further argued that because the map corroborated Ms. Villemarette’s testimony, demonstrating that she met with Troylynn and discussed the details surrounding the night of thé shootings with her, it became relevant at trial.
The Louisiana Supreme Court has previously held that .discovery rules are intended to eliminate unwarranted prejudice arising from surprise testimony to laipermit the defense to meet the State’s case and to allow proper assessment of the strength of its evidence in preparing a defense. State v. Harris, 00-3459 (La.2/26/02), 812 So.2d 612, 617. In the event of a discovery violation, the court may order the party to permit the discovery, may grant a continuance, may order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, -other than dismissal, as may be appropriate. La. C.Cr.P. art. 729.5(A). However, a conviction will not-be reversed on the-basis of the State’s discovery violation unless prejudice is shown. Harris, supra.
. Under the facts of the present case, we find that the trial judge did not abuse her discretion in admitting the hand-drawn map into evidence at trial. Nevertheless, even if a discovery violation occurred, we find defendant has not shown the required prejudice resulting from admission of the map at trial. All of the- information contained in the map or drawing, concerning the layout of the scene of the crime, was corroborated by defendant’s own witness, Mr. Washington.[19] Therefore, we find defendant has failed to show the required prejudice resulting from the alleged discovery violation.
Accordingly, for the reasons discussed above, we find defendant’s assignment of error concerning various discovery violations to be without merit.

Excessive Sentence

In his final assignment of error, defendant asserts that his sentences are uneon- *893 stifutionally excessive. Following his initial sentencing and his sentencing as a multiple offender, defendant urged motions to reconsider sentences. In support of his motions, defendant argued that the sentences were excessive, that he only 122had one prior felony conviction, and . that he was. under the age. of twenty-five at the time of the offenses.[20]
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive' if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Horne, 11-204 (La.App. 5 Cir. 2/14/12), 88 So.3d 562, 569, writ denied, 12-0556 (La.6/1/12), 90 So.3d 437; State v. Wickem, 99-1261 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 968, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839. The trial judge is afforded broad discretion in sentencing and a reviewing court may not set aside .a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D); State v. Berry, 08-151 (La.App. 5 Cir. 6/19/08), 989 So.2d 120, 131, writ denied, 08-1660 (La.4/3/09), 6 So.3d 767; State v. Pearson, 07-332 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 656.
In reviewing a sentence for ex-cessiveness, an appellate court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. State v. Ross, 13-924 (La.App. 5 Cir. 5/28/14), 142 So.3d 327, 333; State v. Lobato, 603 So.2d 739, 751 (La.1992). Á trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular cáse and, therefore, is given broad-discretion in sentencing. State v. Cook, 95-2784 (La.5/31/96), 674 So.2d 957, 958. On review, the issue is whether the trial judge abused her great discretion, not whether another sentence might have been more appropriate. Ross, 142 So.3d at 333; State v. Pearson, 975 So.2d at 656; State v. Horne, supra.
^Defendant was convicted of two counts of attempted second-degree murder in violation of La. R.S. 14:27 and 14:30.1. For a conviction of attempted , second-degree murder, defendant faced a sentencing range of ten years to fifty years imprison-: ment without the benefit of probation, parole, or suspension of sentence. Defendant received forty-year sentences for his attempted second-degree murder convictions.
Defendant was also convicted of aggravated criminal damage to property. La, R.S. 14:55 provides that “[w]hoever commits the crime of aggravated criminal damage to property shall be fined not more than ten thousand dollars, imprisoned with or without hard labor for not less than one nor more than fifteen years, or both.” Defendant was sentenced to fifteen years imprisonment for his aggravated criminal damage to property, conviction.
Defendant was subsequently adjudicated a second felony offender. The trial court vacated defendant’s sentence on count one and imposed an enhanced sentence of sixty-five years on count one. The sentencing range for a second felony offender who commits attempted second-degree murder is twenty-five tó one hundred years at hard labor. See La. R.S, 15:529.1(A)(1); La. R.S. 14:27; La. R.S. 14:30.1.
*894 The imposition of a sentence, although within the statutory limits, may still violate a defendant’s constitutional right against excessive punishment. State v. Scie, 13-634 (La.App. 5 Cir. 1/15/14), 134 So.3d 9, 12. In considering whether the trial court abused its discretion in sentencing a defendant, a reviewing court should consider the nature of the crime, the nature and background of the offender, and the senténces imposed for similar crimes by other courts. Ross, 142 So.3d at 334.
In reviewing a claim that a sentence is excessive, an appellate court generally must first determine whether the trial judge has adequately complied 124with statutory guidelines in La. C.Cr.P. art. 894.1 and whether the sentence is warranted under the facts established by the record. State v. Wiltz, 08-1441 (La.App. 4 Cir. 12/16/09), 28 So.3d 554, 561, writ denied, 10-0103 (La.11/12/10), 49 So.3d 885. If adequate compliance with La. C.Cr.P. art. 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case. State v. Jones, 12-0891 (La.App. 4 Cir. 8/07/13), 122 So.3d 1065, 1087, writ denied, 13-2111 (La.4/11/14), 137 So.3d 1212.
First, we find that the trial judge thoroughly considered the factors set forth in La. C.Cr.P. art. 894.1. In sentencing defendant, the trial judge stated:
The Court has considered the guidelines as set out in the Code of Criminal Procedure, Article 894.1. The Court finds after considering' each of the thirty-three factors that the defendant was found guilty by this court of two counts of attempted second degree murder and one count of aggravated criminal damage to property. The Court will note that both victims in this matter had to be brought in by material witness warrant.
And the Court will also note for the record so the appellate court is very clear, this Court had the ability to watch Ms. Troylynn Smith testify. And not only did she testify that she was threatened if she came to court to testify; her visible demeanor on the witness stand having to testify about this incident was unnerving. So while the appellate court looks at a cold record, this Court had the ability to view the witness, especially Ms. Smith. And based upon her testimony and her physical appearance as she was testifying it’s no wonder she had to be brought in by material witness warrant.
Having considered the guidelines set out in 894.1, the Court finds that Mr. Bradstreet should be sentenced to forty years at hard labor in the Department of Corrections on Count 1, forty years at hard labor in the Department of Corrections on Count 2, and fifteen years at hard labor in the Department of Corrections on Count 3. All three counts should run concurrent with each other with credit for time served from the date of arrest in this ease and this case only.
[[Image here]]
And the Court finds any lesser sentence would deprecate the seriousness of the crime.
Concerning defendant’s attempted second-degree murder convictions, defendant faced a sentencing range of ten years to fifty years imprisonment | ^without the benefit of probation, parole, or suspension of sentence. La. R.S. 14:27; La. R.S. 14:30.1. Therefore, defendant’s forty-year sentence on each count of attempted second-degree murder is within the statutory range. The record reflects that the two victims involved in the shootings were shot *895 multiple times, one undergoing multiple surgeries and admission to the ICU; and were compelled to testify under material witness warrants. The evidence presented at trial demonstrated that the shootings occurred in a residential neighborhood, potentially risking harm to others nearby, and that 29 casings were recovered from the scene. A forty-year sentence for attempted second-degree murder is within the statutory range and has been upheld by other courts. See State v. Jones, supra. Under the facts of this ease, we find defendant’s sentences for his attempted second-degree murder convictions are within the statutory range and not unconstitutionally excessive.
Concerning defendant’s conviction for aggravated criminal damage to property, defendant faced a sentencing range of one to fifteen years imprisonment in addition to a fine not to exceed ten thousand dollars. La. R.S. 14:55. Although the trial judge sentenced defendant to the fifteen-year maximum term of imprisonment, she did not sentence defendant to the maximum penalty under the statute as she did not impose the maximum permissible fine. See State v. Stewart, 15-721 (La.App. 5 Cir. 5/19/16), 193 So.3d 401, citing State v. Richardson, 01-239 (La.App. 5 Cir. 6/27/01), 790 So.2d 717, 720.
The evidence presented at trial reflects that the vehicle at issue — parked in a driveway, abutting a residence in a residential neighborhood — sustained multiple bullet holes from the shootings of three separate weapons, discharging a total of 29 bullets. Under the facts of this case, we find the trial judge did not abuse her discretion in imposing defendant’s sentence for his aggravated criminal damage to property conviction.
12(sConcerning defendant’s enhanced sixty-five year sentence as a multiple offender, defendant faced a sentencing range of twenty-five to one hundred years imprisonment at hard labor.[21] See La. R.S. 15:529.1(A)(1); La. R.S. 14:27; La. R.S. 14:30.1. Therefore, defendant’s sixty-five-year sentence was well within the statutory range. Defendant’s prior felony conviction was first-degree robbery, a statutorily designated crime of violence. See La. R.S. 14:2. This Court has previously upheld a sixty-year enhanced sentence for a defendant convicted of attempted second-degree murder as a second felony offender. See State v. Tyler, 01-1038 (La.App. 5 Cir. 3/26/02), 815 So.2d 205. Considering that defendant’s prior conviction was also a crime of violence and given the facts of this case, which involved multiple gunshot wounds to more than one victim, we find the trial judge did not abuse her great discretion in imposing a mid-range sixty-five-year enhanced sentence. Accordingly, we find defendant’s enhanced sentence as a second felony offender is not unconstitutionally excessive. This assignment of error lacks merit.

ERRORS PATENT REVIEW

We have reviewed the record for errors patent in accordance with La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990) and have found no errors patent requiring corrective action.
The record reflects that defendant’s written motion for appeal was filed prematurely, prior to his sentencing as a multiple offender. This Court has determined that such a procedural defect is cured by subsequent resentencing. See State v. Steele, *896 01-1414 (La.App. 5 Cir. 9/30/02), 829 So.2d 541, writ denied, 02-2992 (La.9/19/03), 853 So.2d 632 (citing State v. Balser, 96-443 (La.App. 5 Cir. 11/14/96), 694 So.2d 351, 354).
In this casé, defendant was subsequently sentenced as a multiple offender. Following his sentencing as a multiple offender, defendant urged an oral motion for appeal, which the trial court granted. Accordingly, no corrective action is necessary.

CONCLUSION

For the reasons provided herein, we affirm defendant’s convictions and sentences.

CONVICTIONS AND SENTENCES AFFIRMED

. On May 11, 2015, defendant filed á motion requesting a judge trial. Following defendant’s sworn testimony in open court as to his desire to have a judge trial, the trial court granted defendant's motion.

. Defendant subsequently filed a motion for new trial and alternatively to arrest judgment, which the trial court denied.

.The trial judge further found defendant in direct contempt of a court order to not communicate with the audience during trial and sentenced defendant to six months imprisonment. The trial judge ordered the six-month sentence for contempt to be served consecu- ■ five to the other sentences imposed.. The trial judge further imposed fees related to defendant's convictions on counts one, two, and three.

. Although the trial judge failed to state that defendant’s sentence is to be served without the benefit of parole, that condition is self-activating under La. R.S. 15:301.1.

. Mr. Washington further testified that a friend accompanied him to Hooter Road, but remained in the vehicle and drove awáy upon hearing gunshots. A material witness warrant was issued for Mr. Washington’s appearance and testimony at trial.

. As there are multiple witnesses with the last name Smith, Troylynn .will be identified by her first name only throughout this opinion.

. A material witness warrant was issued to compel Troylynn’s testimony at trial.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, (1966).

. The application for the arrest warrant issued in connection with the shootings indicates that the shootings occurred at approximately 7:21 p.m. on January 20, 2014.

. Defendant testified that he was arrested on February 20, 2014, and denied making a statement to the arresting officer that he knew the police were looking for him in connection with a shooting in the neighborhood. However, defendant subsequently testified that he did tell one officer that his mother told him that police had been to her house.

. Although Mr. Washington never* identified defendant as the person who shot him, we find the transferred intent doctrine applicable in this case. This Court has found that the doctrine of transferred intent provides that '‘[w]hen a person shoots at an intended victim with the specific intent to kill or inflict great bodily harm and accidentally kills or inflicts great bodily harm upon another person, if the killing. or inflicting of great bodily harm would have been unlawful against the intended victim actually intended to be shot, then it would be unlawful against the person actually shot, even though that person was not the intended victim.” State v. Baham, 14-653 (La.App. 5 Cir. 3/11/15), 169 So.3d 558, 566-67, writ denied, 15-0740 (La.3/24/16), 190 So.3d 1189, quoting State v. Strogen, 35,871 (La.App. 2 Cir. 4/3/02), 814 So.2d 725, 728, writ denied, 02-1513 (La. 12/13/02), 831 So.2d 983.

. The trial court initially granted a two-day continuance, which defense counsel indicated - was an acceptable time period to allow him to view the video with defendant and prepare for trial. However, the trial judge, at the same hearing, Subsequently granted a seven-day continuance pntil May 11, 2015.

.La, C.Cr.P. art. 729.3 provides:
If, subsequent to compliance with an order issued pursuant to this Chapter and prior to or during trial, a party discovers additional evidence or decides to use additional evidence and such evidence is or may be, subject to discovery or inspection under the order issued, he shall promptly notify the other party and the court of the existence of the additional evidence, so that the court may modify its previous order or allow the other party to make an appropriate motion for additional discovery or inspection.

. Miranda v. Arizona, supra.

. Subsequently, the State filed a "Notice of Intention To Use Confession or Statement *889 .. pursuant to Code of Criminal Procedure Article 768” concerning this statement.

. At the trial court level, defendant also filed a motion for a Daubert hearing relating to the testimony of Ms. Johnson, the custodian of the cell phone records and senior specialist for T-Mobile. At ⅛ May 6, 2015 hearing on defendant’s motion, • defense counsel did not object to the admission of the actual cell phone records. Rather, he objected to Ms, Johnson’s testimony, generally and further specifically requested that Ms. Johnson's testimony be limited — precluding testimony concerning the actual location of defendant’s cell phone — to only allow testimony as to the location, of-the towers "used” or "pinged” .by defendant’s celLphone. The trial court *890 agreed and limited Ms. Johnson's testimony accordingly.
■ Although defendant objected at the pre-trial hearing to the court's ruling permitting Ms. Johnson to testify generally as the custodian of T-Mobile’s cellular phone records, he has not assigned that ruling as error on appeal nor' properly briefed any argument concerning that ruling, as required under the Uniform Rules, Courts of Appeal. See State v. Jacobs, 07-887 (La.App. 5 Cir. 5/24/11), 67 So.3d 535, 588, writ denied, 11-1753 (La.2/10/12), 80 So.3d 468, cert. denied, — U.S. -, 133 S.Ct. 139, 184 L.Ed.2d 67 (2012) ("pursuant to Rule 2-12.4 of the Uniform Rules, Courts of Appeal, all specifications or assignments of error must be briefed, and the appellate court may consider as abandoned any specification or assignment of error that has not been briefed. Restating an assigned error in brief without including argument or citation of authority does not constitute briefing.” State v. Lauff, 06-717 (La.App. 5 Cir. 2/13/07), 953 So.2d 813, 819). Thus, this issue is abandoned.

. Even if the State had not provided defendant’s cell phone records to counsel until May 4, 2015, we find that, in light of the trial continuance granted until May 11, 2015, defendant was not prejudiced in the alleged late disclosure.

. On May 5, 2015, the State filed a motion for discovery, seeking disclosure of any evidence or witnesses to support any alibi defense.

. On appeal, defendant also complains of the denial of his motion in limine concerning a statement' made by Mr. Washington to responding officers at the scene following the shootings. The trial court found that the statement made by Mr. Washington to responding officers was admissible as an "excited utterance” exception to the hearsay rule, if Mr. Wáshington was unavailable to testify át trial. Because a material witness warrant was issued and Mr. Washington was present to testify at trial, this issue is moot.

. Defendant urges public policy arguments on appeal concerning the excessiveness of his sentence; however, those- arguments were not urged nor considered at the trial court level and are, thus, not preserved for review on appeal. See La, C.Cr.P. art. 841(A).

. Upon review of the transcript from the sentencing on the multiple bill, we find the trial judge adequately considered the factors set forth in La. C.Cr.P. art. 894.1 in imposing defendant’s enhanced sentence as a second felony offender.