666 So.2d 1142 (1995)
STATE of Louisiana in the Interest of L.A.
No. 95-KA-409.
Court of Appeal of Louisiana, Fifth Circuit.
December 13, 1995.
*1143 John M. Mamoulides, District Attorney, Leigh Anne Wall, Asst. District Attorney, Gretna, for plaintiff-appellee.
George C. Wallace, Jr., New Orleans, for defendant-appellant.
Before GAUDIN, KLIEBERT and WICKER, Jr., JJ.
GAUDIN, Judge.
L.A. was adjudicated a delinquent in the Juvenile Court of Jefferson Parish. He was found to have violated LSA-R.S. 14:34, aggravated battery; LSA-R.S. 14:35, simple battery; LSA-R.S. 14:34.2, simple battery of a police officer, two counts; and LSA-R.S. 14:67.10, theft of goods.
On appeal, L.A. contends that the evidence did not support a finding of delinquency. Also, he alleges (1) that it was error to allow the prosecuting attorney to ask him about a prior informal adjustment agreement he had entered into and (2) that the sentence was excessive. The major part of the sentence was five years detention or until A.H.'s 21st birthday for aggravated battery.
In each of the instances in which L.A. was found to have violated a criminal statute, his testimony was pitted against various state's witnesses. The trial judge obviously found the testimony of the prosecuting witnesses more believable than A.H.'s. Because the credibility of witnesses is not reweighed on appeal, we affirm the October 3, 1994 judgment of the Juvenile Court adjudicating L.A. a delinquent. However, as will be discussed in Assignment No. 3, the dispositions for two counts of battery of a police officer exceeded the permissible maximum. We remand for partial resentencing.

ASSIGNMENT NO. 1
Here, A.H. challenges the sufficiency and weight of the evidence, citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); and State v. Matthews, *1144 459 So.2d 40 (La.App. 1 Cir.1984), 464 So.2d 298 (La.1985) and 468 So.2d 1333 (La.App. 1 Cir.1985, on remand).
On January 22, 1994 at 11 a.m. in the Oakwood Shopping Center on the West Bank of Jefferson Parish, a juvenile later identified as L.A. tried to leave Dillard's department store. An anti-theft alarm sounded. A Dillard's employee, Diana Beasley, told L.A. that she was required to examine his plastic shopping bag.
Beasley went behind the counter with the bag and removed a blue windbreaker. L.A. then also went behind the counter and pushed Beasley against the cash register. He told her to give him his bag but she threw it beyond his immediate reach.
At this time, Jefferson Parish deputies Todd Vignes and Wilke Declouet arrived. They heard Beasley tell L.A., "You don't have to push me that way." Beasley examined L.A.'s windbreaker and discovered two new polo shirts with anti-theft devices attached wrapped up inside the windbreaker. L.A. had neither a receipt nor any other proof that he had in fact purchased the shirts from Dillard's or any other store.
As the officers were escorting L.A. to the back of the store, he hit Officer Vignes and knocked Officer Declouet to the ground and fled, knocking things over as he ran. The officers gave pursuit.
Once outside, L.A. ran to his automobile and tried to start the engine. Not knowing if L.A. had a weapon, Officer Vignes drew his pistol and shouted to L.A. to exit his vehicle. L.A. saw Officer Vignes at the rear of his auto as he (L.A.) continued to try to start the engine.
When the engine did start, L.A. put his auto in reverse and began backing up rapidly. Officer Vignes was struck and knocked into the air. He landed on the trunk, then tumbled to the ground. Officer Vignes, then at the front of the auto, ordered L.A. out of the car. L.A. could have left the scene by continuing to back up; instead, he proceeded forward toward the officer, who fired his pistol into the vehicle, striking L.A.
When L.A.'s car finally stopped, the officer removed L.A. When the policemen realized L.A. had been shot, they placed him on his side and called for an ambulance.
L.A. was found guilty of aggravated battery of Officer Vignes, simple battery of Beasley, battery of police officers Vignes and Declouet and theft.
L.A. testified that he had gone to Dillard's and had placed the polo shirts in his shopping bag. He said that he was going to a nearby sporting goods store and return the windbreaker. After getting his money back for the windbreaker, he said he planned to return to Dillard's and pay for the shirts.
Further, L.A. denied pushing Beasley against the cash register and he denied hitting either officer as he broke away and fled from the store. L.A. said he did not try to drive into or hurt Officer Vignes with his automobile.
The trial judge was not swayed by L.A.'s explanations. On the other hand, if the testimony of Beasley, Vignes and Declouet is accepted as true, as no doubt it was, then the elements of each criminal statute were adequately and legally proven.
To an extent, L.A. corroborated the testimony of the state's witnesses. He admitted trying to leave Dillard's with unpaid for shirts and he said he shoved and tried to take the shopping bag away from Beasley. He said he ran from the officers and tried to escape. He also said that he backed his auto in the direction of Officer Vignes and that he then drove forward.
Viewing the testimony and evidence in the light most favorable to the state, a rational trier of fact could have found L.A. guilty beyond a reasonable doubt of violating the applicable criminal statutes. In the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the court, is sufficient to support a conviction or convictions. See State v. Guice, 645 So.2d 1193 (La.App. 2 Cir.1994), writs denied at 657 So.2d 1022 (La.1995).
This assignment of error has no merit.

*1145 ASSIGNMENT NO. 2
During the hearing, the prosecuting attorney asked L.A. about a prior shoplifting charge in which he was not convicted. L.A. had entered into an informal adjustment agreement. The state contends that the objectionable testimony was proper cross-examination as it was directly relevant to L.A.'s defense that he did not know that he could not leave Dillard's with the two polo shirts. The state further argues that the evidence was relevant because L.A. initially denied going to court, and then changed his testimony.
During the cross-examination of L.A., the following exchange occurred:
Q. You know what shoplifting is, don't you?
A. Yes I do.
Q. And you've been in this court before for shoplifting, haven't you?
A. No, I wasn't .. I didn't come to court for shoplifting.
Q. You've never been in this court for shoplifting?
A. No, I was .. I did not come in for shoplifting. I didn't even come in court. They brought me in a room because I was with somebody who was shop ...
Q. I'm not talking about this incident. I'm talking about anytime in the past?
A. I know what you're talking about.
Q. Okay.
A. That was the only time I ever came here.
Q. For what?
A. I was with a whole bunch of people and they were shoplifting, and they brought me in with my grandparents and they didn't .. cause they told me that I was hanging with the wrong crowd, and I didn't come in court. They brought me in a room and they just told me, and then they .. the people who they caught, I don't know what happened to them. I never talked to them since.
Q. What happened to you?
A. Nothing. They sent me home.
Q. You weren't placed on probation or anything like that?
A. I don't know.
Q. You don't know?
A. Not that I ...
Q. Did you ever report to a probation officer?
A. No.
Q. You never reported to a probation officer?
A. No.
Q. As a result of the shoplifting case that you went through in this court?
A. No. I only came that one time to court with my grandparents.
Q. Okay. If I were to tell you that you were given an informal adjustment agreement for a shoplifting under item number E741390, which means you were placed on probation in this courtroom for shoplifting, would that be inaccurate?
A. I assume .. I never came in here. I only went to the room right there.
Q. Not necessarily .. I'm sorry. I'll re-phrase. Not necessarily this particular courtroom, but this building, Juvenile Court in Jefferson Parish?
A. And I came that one time. I .. they talked to my grandparents after they .. they had just told me about who I was hanging with, and they talked to my grandmother.
After this line of questioning concluded, defense counsel voiced his objection as follows:
"Judge if we were before a jury I think I'd have a real good mistrial here. If counsel has an informal adjustment agreement, he does not have a guilty plea. I don't think the ramifications are the same. It's more akin to a nolo contendre plea. If the grandparents and Latron came in and haggled over something with somebody in the DA's Office, like they run the mill around here, and they walked out with an IAA they did not get a plead guilty as charged, and I don't think that is .. carries the same weight procedurally."
The trial judge found this line of questioning to be proper to test L.A.'s credibility, specifically ruling as follows:

*1146 "Once he denied that he had ever been on probation, had an informal adjustment agreement, I think it opened the door completely and likely, is the point I'm trying to make at this time. All right. He .. I think he .. brought it up properly and I think that your client has opened the door further for him .. to allow him to test his veracity further. If not anything else, his memory. Okay. Overruled."
When the adjudication hearing resumed two days later, defense counsel reurged his objection to the prosecutor's line of questioning regarding whether L.A. had been on probation before or whether he had previously been to juvenile court. Defense counsel, on that day, filed a written Motion to Strike, in which he requested that the court strike the testimony pertaining to the informal adjustment agreement as such testimony was inadmissible pursuant to LSA-Ch.C. art. 841 and LSA-C.E. art. 410.
After listening to argument of counsel, the trial judge ruled as follows:
"In reflecting as to the process at the time, I'm .. I .. I don't think I can honestly say that I was incorrect in my ruling, but I think perhaps I was not totally as informed as to the .. all of the applicable provisions at the time. I know sitting over here for twelve years that the process is sometimes very quick, and it's.. it sometimes is not explained to the juveniles as well as it should be by the IDB appointed attorneys or the attorneys that come in that represent them and only come over here once every five years. So, there's many times I think that there is a possibility that the juveniles don't really quite understand what they're going through. And I think that's .. that very well .. that standard could apply to this juvenile at this point because I think that.. I've seen a lot of children .. I've seen some, unfortunately, some of my children's friends over here and they don't even know what they .. what happened over here it was so quick. I think that there can be argument both ways, but I think that in my reflection over what did transpire I think it would be more proper than not to go ahead and grant the motion to strike. So I will grant the motion to strike and I will say that based on what I .. the reading of the code that I have it would appear that in fact your interpretation would be more accurate about whether he was on probation or not on probation ... so we will strike the testimony relative to that line of questioning from the record. So motion is granted."
If there was any error here, it was harmless. The Motion to Strike was granted and there is no indication or suggestion in this record that either the informal adjustment agreement or L.A.'s testimony regarding the agreement played even a minor role in the adjudication of L.A. as a delinquent.

ASSIGNMENT NO. 3
L.A. says his sentence was excessive.
At the disposition or sentencing hearing, Elizabeth Tucker, a probation officer with the Department of Juvenile Services, testified that she prepared a pre-disposition report on L.A. Through her investigation, she learned that since L.A.'s adjudication of delinquency for these charges, he had had behavioral problems at school, resulting in three suspensions for the school year. His suspensions were for (1) possession of a beeper and taking the beeper off of the principal's desk, (2) fighting on campus and (3) possession of gambling essentials, not having an ID and refusing to furnish his name.
Further, Tucker said that L.A. did not believe that he had done anything wrong. The sentence, in accord with the probation officer's recommendation, was handed down thusly:
"The court's going to sentence the juvenile on the aggravated battery until his twenty-first birthday. The court's going to sentence the juvenile for six months on the simple battery. The court will sentence the juvenile to five years or his twenty-first birthday on this simple battery of a police officer, as well .. that's on G and on H, and the court's going to sentence the juvenile to six months on the theft of goods. All sentences will run concurrent with each other."
Considering the evidence presented at trial and at the disposition hearing, we *1147 cannot say that the sentences for aggravated battery, simple battery and theft were excessive. However, the penalty for battery of a police officer, LSA-R.S. 14:342 B(1), cannot exceed six months. Because L.A.'s sentences for battery of a police officer exceeded the statutory maximum, we remand only for appropriate and corrective resentencing.
ADJUDICATION AFFIRMED. SENTENCE AFFIRMED IN PART AND VOIDED IN PART; REMANDED FOR PARTIAL RESENTENCING.