STATE OF LOUISIANA

VERSUS

SHERNESKIE BELL

NO. 23-KA-85

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 19-0787, DIVISION "J"
HONORABLE STEPHEN C. GREFER, JUDGE PRESIDING

October 31, 2023

**FREDERICKA HOMBERG WICKER**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Stephen J. Windhorst, and Scott U. Schlegel

**AFFIRMED**
   **FHW**
   **SJW**
   **SUS**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
      Honorable Paul D. Connick, Jr.
      Thomas J. Butler
      Darren A. Allemand
      Lynn Schiffman
      Blaine B. Moncrief

COUNSEL FOR DEFENDANT/APPELLANT,
SHERNESKIE BELL
      Sherry A. Watters

**WICKER, J.**

In this criminal proceeding, defendant, Sherneskie Bell, appeals his conviction and sentence for possession of pornography involving juveniles under the age of thirteen in violation of La. R.S. 14:81.1(E)(5)(A). For the following reasons, we affirm his conviction and sentence.

## STATEMENT OF THE CASE

On February 7, 2019, the Jefferson Parish District Attorney filed a bill of information charging defendant with pornography involving juveniles under the age of thirteen in violation of La. R.S. 14:81.1(E)(5)(A).[1] Defendant was arraigned on February 12, 2019, and pled not guilty. The matter proceeded to trial on July 12, 2022, before a twelve-person jury, and on July 13, 2022, the jury returned a unanimous verdict of guilty as charged. On August 10, 2022, the trial court sentenced defendant to twenty-five years in the Department of Corrections without benefit of probation, parole, or suspension of sentence. Defendant filed a motion to reconsider sentence, which the trial court denied on November 28, 2022. This timely appeal followed.

## FACTS

Dajonique Overton testified that she knew defendant through her sister, Chyna Overton, and her mother, Jentrice Overton. Dajonique explained that her sister Chyna, who was twenty-one or twenty-two years old at the time of trial, had previously dated defendant. Dajonique's mother, Jentrice, previously lived in the same home as defendant when she dated Mr. Floyd Burton—who also resided with defendant.[2]

---

[1] The bill alleged that defendant possessed "[v]arious pornography involving juveniles by intentionally possessing any photographs, films, videotapes, or other visual reproductions of sexual performances involving children under the age of 13." The bill of information initially provided the date of the offense as on or between June 27, 2018 and December 6, 2018. The State subsequently amended the bill of information as to the date of the offense in court on July 12, 2022, to reflect the dates of "June 27, 2018 and October 27, 2018."

[2] It is unclear whether Chyna lived with her mother, Jentrice, when Jentrice lived in the same home as defendant.

Dajonique testified that, on October 27, 2018, Chyna called her because she and defendant had an argument. She stated that Chyna took defendant's phone because she found photos of herself on defendant's phone that she wanted to delete. Dajonique testified that, on that date, her sister showed her "perverted" things on defendant's phone; she took defendant's phone from Chyna and observed on defendant's phone images of "little children doing inappropriate stuff," which she described as child pornography. Dajonique testified that she took the phone to the Kenner police station that night.

Officer Phillip Grayson with the Kenner Police Department testified that on the evening of October 27, 2018, Dajonique turned in a cellular phone that she claimed belonged to defendant. He confirmed that there were thousands of photos of naked children on the phone. After observing the photos, he collected the phone as evidence and notified detectives.

Agent Kathleen Fronczak, a former detective with the Kenner Police Department also previously assigned full-time to the FBI Violent Crimes Against Children Task Force[3], testified that on October 30, 2018, she was contacted by her lieutenant for assistance in an ongoing investigation involving defendant and an electronic device turned in to the Kenner Police Department. She testified that the phone contained child sexual abuse material ("CSAM"), which is also known as child pornography. Agent Fronczak explained that prior to getting involved in the investigation, there had been three police reports taken in the matter. The first report was dated October 27, 2018, and documented Dajonique turning the phone in to the police department. The second report, dated October 29, 2018, documented defendant reporting that his phone had been stolen by Chyna, who he claimed had downloaded child pornography on it. The final report involved

---

[3]Detective Fronczak testified that at the time of trial she was no longer employed in law enforcement but was employed as a Child Safety Specialist for an online entertainment platform, TikTok.

Dajonique reporting that defendant had issued threats to her through her mother, Jentrice.

Agent Fronczak testified that on October 31, 2018, she opened the federal case file with the FBI, which ran concurrently with the investigation of the Kenner Police Department. She testified that Agent Richard Clark, another member of the task force, applied for a federal search warrant for the phone. The warrant was signed and granted on November 30, 2018, and the phone was submitted to technicians with the FBI to conduct an extraction.

Agent Whitney Blankenship, a special agent with the FBI and digital evidence extraction technician, executed the search warrant on the phone on December 3, 2018, and compiled the evidence for Agent Fronczak's review. When reviewing the report, there was a section—the downloads folder—that Agent Fronczak thought the extraction missed. She then took possession of the phone, with Agent Blankenship present, to verify what she believed was missing and located the downloads folder on the phone. When she manually accessed the downloads folder, Agent Fronczak observed thousands of images in the GIF format and noted "a great many" that contained CSAM. Agent Fronczak also testified that she observed more than 100 photos of defendant's penis on his phone.[4] She explained the following as to the CSAM materials found:

> So they had material which were -- which exhibited minors, some very young, a lot prepubescent, but some as young as what I approximated to be three years old, and a lot of those images included, like, active sexual abuse, meaning actual sexual assault of children. Other images included exhibition of children's genitals. And I also observed a lot of child erotica, which is a term we use to denote images which are highly sexualized, of minors, but don't necessarily fit a statutory definition, as well as something called Lapente (assumed spelling) pornography, which is Anime…

---

[4] Agent Fronczak testified that she recognized that the floor in the photos matched the floor of defendant's residence and further that some of the photos also contained defendant's face in the photos.

After observing the "plentiful" images on the phone, she obtained an arrest warrant for defendant's arrest. After his arrest, detectives advised defendant of his *Miranda* rights, and defendant indicated that he wanted to speak with Agent Fronczak and another detective to provide a statement concerning his relationship with Chyna and his allegations that Chyna set him up by downloading child pornography onto his phone. While speaking with detectives, defendant did not deny ownership of the phone and also gave consent for officers to search his residence.[5]

On December 30, 2018, officers searched defendant's residence. Among items found were pages of a notebook that contained handwritten notes of web addresses of what Agent Fronczak suspected to be CSAM or teen-oriented pornography. Agent Fronczak also testified to the contents found in another notebook that included writings discussing the "historical ages of marriage" and a writing that stated in Yorkshire, England, one can or could "marry girls or young women that were as young as twelve and sometimes as early as seven to nine years old, but were not to consummate the marriage until the girl menstruated." Agent Fronczak testified to finding the writings "interesting" given the investigation.

After a full investigation, Agent Fronczak found 2,771 images on defendant's phone, which she assessed to be child pornography or CSAM. The files were submitted to the National Center for Missing and Exploited Children (NCMEC). Through the Child Victim Identification Program, the NCMEC report identified a number of "series" of known victims found in the files of defendant's phone. She testified that the videos and images had been downloaded between July and October 2018.

---

[5] The audio-recorded statement was played for the jury.

23-KA-85                                                  4

Agent Fronczak obtained defendant's phone records and reviewed the subscriber information and call logs for July 1, 2018 to October 28, 2018. She testified that the download times were concurrent with some texts or phone communication between defendant's phone number and Chyna's phone number and that many of the downloads took place between 12:30 a.m. and 3:30 a.m. Agent Fronczak found this information important because it indicated that defendant's phone was communicating with Chyna's phone at the time of some of the downloads. She further found the timing of the downloads important because defendant had also claimed that his phone was not password-protected and that several of his co-workers had access to his phone, but that he did not work night shifts.

Agent Fronczak also testified that, although defendant claimed he contacted the Kenner Police Department on the evening of October 26, 2018 to report his phone stolen, she could not locate any record of any report made on that date. Moreover, she testified that when she interviewed defendant concerning the contents of his phone, defendant quickly stated that he didn't "do downloads." However, she testified that she never informed defendant that the images were located in the downloads folder and did not recall any other officer or detective mentioning downloads to defendant prior to that time.

Lieutenant Solomon Burke, commander of the Digital Forensics Unit with the Jefferson Parish Sheriff's Office and an expert in the field of mobile device forensics, testified that he did a digital extraction of defendant's phone. He also testified that he observed over one thousand child pornography images on the phone and that the download dates of the photos went back to July of 2018. Lieutenant Burke testified that in order to physically download an image onto one's phone, one would usually press

the image or the three little dots by the image and select download. When asked if it was possible if someone was able to hack into defendant's phone to download the photos, Lieutenant Burke explained the hacker would need to have physical access to the phone or would have to download remote access software to be able to access the device. He testified there was no remote software found on defendant's device.[6] Lieutenant Burke also testified as to different methods of "putting something on a phone." He explained one could "hook a cord from one thing to another, and move that stuff over" or through Wi-Fi or Bluetooth. He explained that in order to move an image from one device to another through Wi-Fi or Bluetooth, the receiving device would have to "accept" it, and a password would have to be entered to establish the connection between the two devices. Lieutenant Burke testified that defendant's phone was unlocked and was not password protected. When discussing defendant's claim that Chyna downloaded the images onto his phone after she stole the phone on October 26, 2018, he testified that it was not possible for one to download the thousands of photos and videos onto the phone on that date and then change the "created or accessed" dates that spanned from July to October of 2018. He explained that it would require technology far beyond what even federal agencies would be able to do. He explained that even then, it would leave trace evidence of such modifications. He testified that of all the photos he reviewed, there was no evidence that anything had been changed or modified.

---

[6] Lieutenant Burke testified that it was possible to get on the dark web through the Chrome browser, which had been installed on defendant's phone, but that you would likely have to use a lot of other software to interact with Chrome to access it. He testified that such software was not found on defendant's phone. Agent Fronczak testified however that a "basic search" on the internet could locate child pornography although more CSAM is available if an app or certain software is downloaded onto the phone to access the dark web. There was no evidence of that app or software on defendant's phone.

Defendant testified at trial. Defendant testified that he did not know there was child pornography on his phone until Chyna and Dajonique showed it to him the evening of October 26, 2018 under "blackmailing" circumstances. Defendant explained that he and Dajonique discussed that he was in the process of opening a business—"a hair shop and lingerie shop." They discussed "putting Chyna back over the business," and defendant explained that Chyna believed she would be the one running the business. Defendant stated however that he had not agreed to have Chyna running the business, and he opined that Chyna stole his phone to blackmail him and use it "for gain."

Defendant explained that Chyna stole his phone on the night of Friday, October 26, 2018. He stated that Chyna was standing in his driveway, and he told her to leave and come back the next morning, but she refused to leave and went inside. He testified that Chyna went upstairs into his bedroom and shut the door. Defendant attempted to open the door, but Chyna would not open it and would not answer him. He stated that Chyna finally opened the door and ran out the building with defendant's phone. Defendant testified that he followed Chyna to her sister, Dajonique's, house to try to get his phone back. He testified that before he could get to Chyna, she went inside her sister's house. Defendant knocked on the door, but no one answered, and he announced he was going to call the police.

Defendant testified that he called the police from his apartment on October 26, 2018, and reported that Chyna stole his phone. He stated that two officers arrived; one officer knocked on Dajonique's door to attempt to get the phone back, but no one answered the front door. Defendant testified that he went to the Kenner police station the following Monday morning to make a formal report of his phone being stolen.

Defendant testified that he was not familiar with smartphones. He testified that when he purchased his smartphone, Chyna set it up for him because she was "savvy" with high tech stuff. Defendant explained that although he told Agent Fronczak in his statement he had been seeing Chyna since she was seventeen, he had not been "seeing her in a relationship" since that time, but rather had been "knowing" her since she was seventeen years old. He explained that Chyna called him a friend and would come over to defendant's house because her mother had previously dated another individual who lived with defendant. Defendant explained that he had considered Chyna to be a friend, would give Chyna money when she asked for it, and encouraged Chyna to follow her passion of being a hair dresser to better her life since becoming a mother.[7]

Ms. Maureen Williams testified that she had known defendant for thirty-six years. She explained that, in 2018, there were other people living with defendant. She testified to occasions on which she had called defendant on his cell phone when someone else answered the phone and then handed defendant his phone. However, Ms. Williams stated she never saw Chyna with defendant's phone.

**DISCUSSION**

On appeal, defendant challenges the sufficiency of the evidence presented against him. He further contends that the trial court erred in allowing certain hearsay testimony concerning how Chyna allegedly gained possession of defendant's phone. He asserts that because Chyna did not testify at trial, the admission of that hearsay was prejudicial and was not

---

[7] The State introduced into evidence text messages from October 2018 between defendant and Chyna, to support a finding that their relationship was sexual in nature at that time.

harmless.  Finally, he challenges the constitutionality of his twenty-five year sentence as constitutionally excessive.

We first address defendant's argument that the evidence presented against him was insufficient to support the verdict.  When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence." *State v. Mouton*, 22-444 (La. App. 5 Cir. 12/29/22), 358 So.3d 106, 113, quoting *State v. Hearold*, 603 So.2d 731, 734 (La. 1992).

The standard for appellate review of the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier-of-fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *State v. Bailey,* 04–85, p. 4 (La. App. 5th Cir. 5/26/04), 875 So.2d 949, 954–955, *writ denied,* 04-1605 (La. 11/15/04), 887 So.2d 476.

Under the *Jackson* standard, a review of a criminal conviction record for sufficiency of evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. *State v. Britton*, 22-476 (La. App. 5 Cir. 5/10/23), 366 So.3d 652, 662–63; *State v. Jones,* 08-20 (La. App. 5 Cir. 4/15/08), 985 So.2d 234, 240. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. *State v. Flores*, 10-651 (La. App. 5 Cir. 5/24/11), 66 So.3d 1118, 1122.  When the trier-of-fact is confronted by conflicting testimony, the determination of that fact rests solely with that judge or jury, who may accept or reject, in whole or in part, the testimony of any witness. *State v. Hooker*, 05-251 (La. App. 5 Cir. 1/17/06), 921 So.2d 1066, 1074. It is not the function of the appellate court to assess the credibility of witnesses or to re-weigh the evidence. *State v. Marcantel,* 00-1629 (La. 4/3/02),

815 So.2d 50, 56; *Bailey,* 04–85 at 5, 875 So.2d at 955. Moreover, in the absence

of internal contradiction or irreconcilable conflicts with physical evidence, the

testimony of one witness, if believed by the jury, is sufficient to support a

conviction or convictions. *State v. Winston*, 02-1161 (La. App. 5 Cir. 3/25/03), 844

So.2d 184, 190, *writ denied*, 03-1284 (La. 11/14/03), 858 So.2d 419; *State of La. in*

*the Interest of L.A.,* 95-409 (La. App. 5 Cir. 12/13/95), 666 So.2d 1142, 1144. A

reviewing court may impinge on the factfinder's discretion only to the extent

necessary to guarantee the fundamental due process of law. *State v. Britton*, 366

So.3d 652, 662–63, citing *State v. Harris*, 02-1589 (La. 5/20/03), 846 So.2d 709,

713.

Evidence may be direct or circumstantial. Circumstantial evidence

consists of proof of collateral facts and circumstances from which the

existence of the main fact can be inferred according to reason and common

experience. *State v. Williams,* 05–59 (La. App. 5 Cir. 5/31/05), 904 So.2d

830, 833. All evidence, both direct and circumstantial, must be sufficient to

support the conclusion that the defendant is guilty beyond a reasonable

doubt. *State v. Bradstreet*, 16-80 (La. App. 5 Cir. 6/30/16), 196 So.3d 876,

884–85, citing *State v. Bone,* 12–34 (La. App. 5 Cir. 9/11/12), 107 So.3d 49,

58, *writ denied,* 12–2229 (La. 4/1/13), 110 So.3d 574; *State v. Wooten,* 99-

181 (La. App. 5 Cir. 6/1/99), 738 So.2d 672, 675, *writ denied,* 99-2057

(La.1/14/00), 753 So.2d 208.

Encompassed within proving the elements of an offense is the

necessity of proving the identity of the defendant as the perpetrator. *State v.*

*Ellis*, 18-463 (La. App. 5 Cir. 7/15/19), 276 So.3d 633, 642–43; *State v. Ray*,

12-684 (La. App. 5 Cir. 4/10/13), 115 So.3d 17, 20, *writ denied*, 13-1115

(La. 10/25/13), 124 So.3d 1096. Where the key issue is identification, the

State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. *Id.*

Defendant was convicted of possession of pornography involving juveniles under the age of thirteen. Under La. R.S. 14:81.1(A)(1) it shall be unlawful for a person to produce, promote, advertise, distribute, possess, or possess with the intent to distribute pornography involving juveniles. La. R.S. 14:81.1(A)(1). Pornography involving juveniles is a general intent crime. See *State v. Cinel,* 94-0942 (La. 11/30/94), 646 So.2d 309, 316, *cert. denied*, 516 U.S. 881, 116 S. Ct. 215, 133 L. Ed. 2d 146 (1995). General criminal intent is present when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. *Id*. at 314; La. R.S. 14:10(2).

On appeal, defendant argues that the State failed to prove he knowingly possessed the pornographic images and supports this contention by pointing to testimony that he lacked anything other than basic knowledge of how his phone functioned. Defendant asserts that because the photos were found in the downloads folder of his phone and not the photo gallery, that most phone owners, like himself, are unaware of where the "downloads" folder is on a cell phone. Although defendant frames his argument as an issue of knowing possession, defendant does not argue that he accidentally downloaded the images but repeatedly rests on his lack of knowledge of operations of the cell phone and thus the lack of proof of the identity of the person who downloaded the images, turning to his argument and defense that Chyna and her family set him up.

At trial, the State presented evidence to the jury that defendant's phone contained 2,771 images and videos of pornography involving children

under the age of thirteen, with some images and videos appearing to involve sexual abuse of children as young as toddlers. Through Agent Fronczak's testimony, the State demonstrated that the 2,771 images and videos at issue were downloaded over a period of time from July 2018 to October 2018—thereby discrediting defendant's initial claim that Chyna stole his phone on October 27, 2018, and downloaded the pornographic content on that date. Lieutenant Burke also testified that to be able to download thousands of images and videos and then change the "created or accessed" dates of each image would require technology far beyond what federal agencies have the ability to do and, thus, it would be reasonable for the jury to conclude that Chyna could not have downloaded all of the 2,771 images and videos onto defendant's cell phone and subsequently changed the "created or accessed" download dates. He further indicated that, had the dates of access been changed, trace evidence of such modifications would have been detectable and were not detected in the review of defendant's device.

Agent Fronczak's testimony further demonstrated that many of the images and videos downloaded onto defendant's cell phone were downloaded between 12:30 a.m. and 3:30 a.m., discrediting defendant's alternative claim that various co-workers could have accessed and downloaded the images onto his phone during his daytime working hours.

Upon review of the record on appeal, we find that the State presented sufficient evidence to support defendant's conviction for pornography involving juveniles under the age of thirteen in violation of La. R.S. 14:81.1. This assignment of error lacks merit.

In his next assignment of error, defendant asserts that "[t]he trial court erred in allowing testimonial hearsay and backdoor hearsay, for which there was no exception." Defendant complains that the State failed to produce

Chyna as a witness, contending, "as Chyna Overton was the key player in the State's case, it was the State's duty to produce her." Defendant relatedly argues that his constitutional right to confrontation was denied because Chyna was not produced as a witness and he could not confront her about her allegations in this case. Defendant complains of Dajonique's testimony concerning her sister, Chyna, and argues that the State should have been required to call Chyna as a witness.[8]

Immediately before trial, defendant made an oral motion to continue the trial, contending that counsel had learned just the day before that one of the state's listed witnesses, Chyna Overton, became unavailable as she was hospitalized having a baby. The State informed the court and counsel that it was prepared to proceed to trial and that it did not intend to call Chyna as a witness, or use any testimony or statement from Chyna at trial. Defense counsel acknowledged that he did not subpoena Chyna as a defense witness for trial. Counsel for the State explained to the trial court that it intended to call Chyna's sister, Dajonique Overton, who is the individual who actually turned defendant's cell phone into police and who would testify to her own knowledge of the images that she personally observed on defendant's cell phone. After argument, the trial court denied the motion to continue trial. Defendant did not file an emergency writ to this Court seeking review of the denial of the motion to continue.

---

[8] In his brief, defendant also complains of records admitted at trial concerning the federal investigation as well as hearsay admitted during Officer Phillips' testimony. However, a review of the record reflects that counsel did not object to any evidence introduced. Further, as to certain testimony provided by Officer Phillips, we find that the record reflects that testimony concerning how Dajonique obtained defendant's cell phone was elicited by defendant's counsel at trial and was also not objected to. The Louisiana Supreme Court has held that the State cannot be charged with testimony elicited by defense counsel and that defense counsel cannot claim reversible error on the basis of evidence he elicited. *State v. Kimble*, 375 So.2d 924, 928-29 (La. 1979); *State v. Griffin*, 15-0125 (La. App. 4 Cir. 9/16/15), 176 So.3d 561, 580, *writ denied*, 15-1894 (La. 11/7/16), 208 So.3d 896. Moreover, defendant failed to object to any alleged hearsay and, thus, defendant did not preserve any hearsay objection for this Court's review. La. C.Cr.P. art. 841.

On appeal, defendant complains that his constitutional right to confrontation was denied because he was not permitted to cross-examine Chyna concerning the allegations against him. He further complains that the trial court allowed hearsay to be admitted during Dajonique's testimony concerning how Dajonique gained possession of defendant's phone from Chyna. A review of the record, however, reflects that defendant did not make any hearsay objection throughout the entirety of Dajonique's trial testimony, and therefore the trial court did not rule on a defense hearsay objection. Instead, defendant raises this claim—that the trial court erred in allowing certain hearsay testimony—for the first time on appeal.

In order to preserve the right to seek appellate review of an alleged trial court error, the party alleging the error must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for that objection. La. C.Cr.P. art. 841; *State v. Gaal,* 01–376 (La. App. 5 Cir. 10/17/01), 800 So.2d 938, 949, *writ denied,* 02–2335 (La.10/3/03), 855 So.2d 294. The purpose behind the contemporaneous objection rule is to put the trial judge on notice of an alleged irregularity allowing him the opportunity to make the proper ruling and correct any claimed prejudice to the defendant. *Id.* This prevents the defendant from gambling for a favorable verdict at trial, and then later utilizing appellate review to correct errors that might easily have been corrected by the trial judge. *State v. Berkeley,* 00–1900 (La. App. 5 Cir. 5/30/01), 788 So.2d 647, 653, *writ denied,* 01–1659 (La. 4/26/02), 814 So.2d 549.

Since defendant did not raise a contemporaneous objection to the alleged hearsay testimony, there is no ruling for this Court to review. See *State v. Hawkins*, 06-739 (La. App. 5 Cir. 9/25/07), 968 So.2d 1082, 1089–

90, *writ denied,* 07-2272 (La. 4/18/08), 978 So.2d 347; *State v. Davis,* 06–402, p. 10 (La. App. 5 Cir. 11/28/06), 947 So.2d 48, 58.

Second, to the extent that defendant alleges that his right to confrontation was violated by the State's failure to call Chyna as a witness at trial, we find defendant's argument misplaced. The Sixth Amendment to the United States Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." *State v. Robinson*, 01-0273 (La. 5/17/02), 817 So.2d 1131, 1135. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska,* 415 U.S. 308, 315–316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974) (quoting 5 J. WIGMORE, EVIDENCE § 1395, p. 123 (3d ed.1940)). Cross-examination is the principal means by which believability and truthfulness of testimony are tested and the cross-examiner has traditionally been allowed to impeach, or discredit, the witness. *Id.*; *See Davis v. Alaska,* 415 U.S. at 316, 94 S.Ct. at 1110; *State ex rel. Nicholas v. State,* 520 So.2d 377, 380 (La.1988); *State v. Hillard,* 398 So.2d 1057, 1059–1060 (La.1981).

At trial, the State did not call Chyna as a witness. However, the State also did not introduce Chyna's statement or rely on any other testimony, affidavit, or statement from Chyna that would cause or require defendant to discredit or impeach her statement or testimony. Therefore, defendant's argument concerning a violation of his right to confrontation is misplaced. This assignment of error lacks merit.

In his final assignment of error, defendant contends that his twenty-five-year sentence for possession of pornography involving juveniles is constitutionally excessive. Defendant acknowledges that his sentence is within statutory range, but asserts that his sentence is nonetheless excessive

considering he is a 62-year-old man with no prior criminal history. Defendant argues that his sentence is grossly disproportionate to the offense and "viewed in light of the harm to society, it truly shocks the sense of justice that the upper level sentence was imposed on this circumstantial evidence case."

The State responds that defendant's sentence is not constitutionally excessive considering that thousands of images of child pornography were found on defendant's phone, including images and videos of toddlers and pre-K children being actively sexually assaulted. The State argues that given the volume of child pornography and its disturbing nature, coupled with defendant's lack of remorse and attempt to "weave an elaborate and absurd conspiracy theory to elude justice," the trial court did not abuse its discretion in imposing a "mid-range" twenty-five-year sentence.

Defendant filed a motion to reconsider sentence in the trial court. After a hearing, the trial court denied the motion to reconsider sentence, stating the following:

> All right. So, again, the Court was present during the course of the trial. I guess I would take note of the testimony of the two law enforcement officers who testified, Officer Phillip Grayson who spoke of -- confirmed there were thousands of naked images, naked children on the cell phone, and then the former FBI agent, I believe she was, Kathleen Fronczak, who also testified. I think she talked of 2,271 Agent Fronczak testified to finding 2,771 child pornography photos on defendant's phone…images on the phone. I think there was discussion of more. Those are the notes that I happened to write down that I'm referencing.

> I would say a number of things. One, you made a comment along the way about the fact Mr. Bell was not abusing children. By simply possessing these photos, he didn't participate in the production or manufacture of any of the child pornography, although that may be true, I would disagree with your assessment that possession of child pornography does not constitute abuse of children. The images are produced for the sexual gratification of others. Children are naturally abused in order to produce those images. I think possessing those images contributes to that abuse, and I would consider it abuse of children as well.

The fact that the State chooses to bill the way they bill these cases doesn't make them any less severe. The State chooses to bill per device, so they don't bill per image. They have the right, I think, to bill each one of these as a separate count and as a separate image. Mr. Bell could have been charged with, at least by my notes, of 2,271 counts of child pornography, which may have, in your mind, made the sentencing less severe, Mr. Quenin, I'm not sure. But just because the State's billing scheme uses one device per charge as opposed to individual images per charge doesn't make it any less severe or less significant in the Court's opinion.

The sentence I gave Mr. Bell was after a careful consideration of the factors in 894.1, both mitigating and aggravating. I think the 25 years, being in the middle of that range of 10 to 40, is well justified in the case based upon the testimony. Whether Mr. Bell denies the -- denies his role in this or not is of no consequence. A jury convicted Mr. Bell unanimously and, thus, the Court is tasked with sentencing him based upon the facts and evidence that came out during the course of that trial. I think my sentence is appropriate based upon those facts and evidence.

The Eighth Amendment to the U.S. Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. *State v. Calloway*, 19-335 (La. App. 5 Cir. 12/30/19), 286 So.3d 1275, 1279, *writ denied*, 20-266 (La. 7/24/20), 299 So.3d 69. A sentence is considered excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or imposes needless and purposeless pain and suffering. *State v. Woods*, 18-413 (La. App. 5 Cir. 12/19/18), 262 So.3d 455, 460.

In reviewing a sentence for excessiveness, the reviewing court shall consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court's sense of justice, while recognizing the trial court's wide discretion. *Calloway, supra*. The trial judge is afforded broad discretion in sentencing, and a reviewing court may not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D). The relevant question on appeal is whether the trial court abused its broad

sentencing discretion not whether another sentence might have been more appropriate. *See State v. Dixon*, 19-7 (La. App. 5 Cir. 12/30/19), 289 So.3d 170, 174, *writ denied,* 20-143 (La. 7/17/20), 298 So.3d 176. The sentence imposed should not be set aside as excessive in the absence of a manifest abuse of discretion. *State v. Hankton*, 20-388 (La. App. 5 Cir. 7/3/21), 325 So.3d 616, 623, *writ denied*, 21-1128 (La. 12/7/21), 328 So.3d 425.

In reviewing a trial court's sentencing discretion, three factors are considered: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentence imposed for similar crimes by the same court and other courts. *Woods*, *supra*; *State v. Allen*, 03-1205 (La. App. 5 Cir. 2/23/04), 868 So.2d 877, 880. However, there is no requirement that specific matters be given any particular weight at sentencing. *Woods*, *supra.*

At the time of the offenses in the instant case, the penalty for pornography involving juveniles pursuant to La. R.S. 14:81.l (E)(1)(a), provided a sentencing range of five to twenty years at hard labor, to be served without the benefit of parole, probation, or suspension of sentence. However, because Defendant was convicted of pornography involving juveniles under the age of 13 and was an offender over the age of 16, he faced an increased sentencing range under La. R.S. 14:81.1(E)(5)(a) of ten to forty years, at hard labor, to be served without the benefit of parole, probation, or suspension of sentence. Thus, under both La. R.S. 14:81.l (E)(1)(a) and La. R.S. 14:81.1(E)(5)(a), the sentencing range for pornography involving juveniles under the age of 13 for this offender is ten to forty years, at hard labor, to be served without the benefit of parole, probation, or suspension of sentence.

The evidence presented against defendant at trial reflects that defendant possessed 2,771 images or videos depicting naked prepubescent

children. Some of these images reflect children who appear to be as young as toddler age. Many of the videos and images do not simply reflect disturbing images of naked children, but rather depict graphic acts of physical sexual abuse of those children, including attempted penetration as well an image of a prepubescent vagina filled with what appears to be semen.

The sentencing judge in this case, the Honorable Stephen Grefer, is the same trial judge who presided over the trial and viewed all of the evidence presented against defendant at trial. The trial judge specifically stated that he considered all of the aggravating and mitigating factors pursuant to La. C.Cr.P. art. 894.1, and found that a mid-range twenty-five-year sentence was appropriate under the facts of this case. Upon review of the record on appeal and the evidence presented against relator at trial, we cannot say that the trial judge abused his discretion in sentencing defendant.[9]

## DECREE

For the reasons provided, we find that the State presented sufficient evidence against defendant to support his conviction for possession of pornography involving juveniles under the age of thirteen in violation of La. R.S. 14:81.1. We further find that, given the volume and content of the pornographic material or CSAM discovered on defendant's electronic device, the trial judge did not abuse his discretion in sentencing defendant and, thus, defendant's twenty-five year sentence is not constitutionally excessive. Accordingly, we affirm defendant's conviction and sentence.

**AFFIRMED**

---

[9] We further point out that this Court has recently determined constitutional a 25-year-sentence for possession of pornography involving juveniles under the age of thirteen. See *State v. Bradley*, 22-381 (La. App. 5 Cir. 3/1/23), 360 So.3d 562, 571.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **OCTOBER 31, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 23-KA-85

## E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE STEPHEN C. GREFER (DISTRICT JUDGE)
DARREN A. ALLEMAND (APPELLEE)          THOMAS J. BUTLER (APPELLEE)          SHERRY A. WATTERS (APPELLANT)

## MAILED

BLAINE B. MONCRIEF (APPELLEE)
ASSISTANT DISTRICT ATTORNEY
JUVENILE COURT
1546 GRETNA BOULEVARD
HARVEY, LA 70058

HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
LYNN SCHIFFMAN (APPELLEE)
ASSISTANT DISTRICT ATTORNEY
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053